IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOHN S. COOPER, HELEN K.      )    CIVIL NO. 11-00241 LEK-RLP
COOPER, AND PETER MALCOLM     )
COOPER,                       )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
BANK OF NEW YORK MELLON FKA   )
THE BANK OF NEW YORK, AS      )
TRUSTEE FOR THE CERTIFICATE   )
HOLDERS OF THE CWALT, INC.    )
ALTERNATIVE LOAN TRUST 2007-  )
HY6 MORTGAGE PASS-THROUGH     )
CERTIFICATES, SERIES 2007-    )
HY6; MORTGAGE ELECTRONIC      )
REGISTRATION SYSTEMS, INC.;   )
CWALT, INC.; AND DOES 1       )
THROUGH 50 INCLUSIVE,         )
                              )
          Defendants.         )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

          Before the Court is Defendants Bank of New York Mellon,

formerly known as The Bank of New York, as Trustee for the

Certificate Holders of The CWALT, Inc. Alternative Loan Trust

2007-HY6 Mortgage Pass-Through Certificates Series 2007-HY6

("BONY")[1] and Mortgage Electronic Registration Systems, Inc.'s

---

[1] BONY contends that it was erroneously sued as "The Bank of
New York, as Trustee for the Certificate Holders of The CWALT,
Inc. Alternative Loan Trust 2007-HY6," and makes its appearance
as Bank of New York Mellon.

("MERS")(collectively "Defendants"[2]) Motion to Dismiss

Plaintiffs' First Amended Complaint ("Motion"), filed on July 18,

2011.  Plaintiffs John S. Cooper, Helena K. Cooper, and Peter

Malcolm Cooper (collectively "Plaintiffs") filed their memorandum

in opposition on July 26, 2011, and Defendants filed their reply

on August 3, 2011.  This matter came on for hearing on August 8,

2011.  Appearing on behalf of Defendants was Andrew Lautenbach,

Esq., and appearing on behalf of Plaintiffs was James Fosbinder,

Esq.  After careful consideration of the Motion, supporting and

opposing memoranda, and the arguments of counsel, Defendants'

Motion is HEREBY GRANTED IN PART and DENIED IN PART for the

reasons set forth below.  Specifically, Counts I, II, and III are

DISMISSED WITH PREJUDICE and Count IV is DISMISSED WITHOUT

PREJUDICE.

## BACKGROUND

Plaintiffs executed a mortgage ("Mortgage")[3] and

promissory note ("Note") secured by real property located at 56

Kai La Place, #22B, Kihei, Hawaii ("the Property"), in favor of

First Magnus Financial Corporation ("First Magnus").  [First

Amended Complaint at ¶ 10.]  The Mortgage was recorded in the

---

[2] The Court refers to moving Defendants BONY and MERS
throughout as "Defendants."  It does not appear that defendant
CWALT, Inc. has been served or appeared in this case, and
therefore, it is not addressed further in this Order.

[3] A copy of the Mortgage is attached to the First Amended
Complaint as Exhibit A.

Office of the Assistant Registrar of the State of Hawaii, Bureau

of Conveyances, Land Court System, on April 2, 2007, as Document

No. 3582734, on Certificate No. 852,079.  [Id.]  According to

Plaintiffs, the Mortgage states that MERS both serves "solely as

nominee for Lender" and is the mortgagee "under this Security

Instrument."  [Id. at ¶ 11.]  On or about June 15, 2007,

Plaintiffs allege they received a notice from non-party

Countrywide Home Loans ("Countrywide") that their loan was

transferred from First Magnus to Countrywide.[4]  [Id. at ¶ 12.]

     The First Amended Complaint alleges that:

          13. On or about August 21, 2007, First Magnus
          filed for bankruptcy in the U.S. Bankruptcy Court
          for the District of Arizona, case number

---

     [4] The purported Transfer Notice is attached to the First
Amended Complaint as Exhibit B.  The undated document from Bank
of America Home Loans states, in pertinent part:

          We are the servicer of the above loan and are
          sending this letter on behalf of the assignee of
          your loan.  As we have previously advised you, we
          have found it necessary to refer your loan to our
          attorneys to commence a foreclosure proceeding on
          the property that secures the loan.
          . . . .
          In order to proceed with the foreclosure, we are
          causing an assignment document to be filed in the
          county records which evidences the prior transfer
          of your loan to the current assignee.  The
          assignment document is dated February 3, 2011.
          The transfer of your loan is recorded on the books
          and records of the assignee and the servicer.
          . . . .
          The assignee of your loan is The Bank of New York
          Mellon. . . .

[First Amended Complaint, Exh. B.]

4:07-bk-01578, and or about May 15, 2008, the U.S.
Bankruptcy Court for the State of Arizona
appointed a liquidation trustee for the affairs of
First Magnus, and that liquidation trustee was
empowered to make all business decisions for First
Magnus from that (sic) on, and that any authority
MERS may have had with regard to First Magnus'
interest in the mortgage terminated no later than
May 15, 2008.  Plaintiffs request the Court take
judicial notice of the First Magnus bankruptcy
case.

14. On or about February 17, 2011, an
Assignment of Mortgage (the Assignment) executed
on February 7, 2011, by KEVIN A. DURHAM,
purportedly in his capacity as Assistant Vice-
President of MERS "solely as nominee" for First
Magnus in which it purports to transfer to BONY,

> all mortgagee interest under that certain
> Mortgage dated 3/26/2007 executed by John S.
> Cooper and Helena K. Cooper and Peter Malcolm
> Cooper, mortgagor, in favor of Mortgage
> Electronic Registration Systems, Inc., as
> nominee for First Magnus Financial
> Corporation as mortgagee, recorded as
> Document No. 3582734 on Transfer Certificate
> Title No. 852,709 on 4/2/2007 in the Office
> of the Assistant Registrar of the State of
> Hawaii. . . . Together with the note or notes
> therein described or referred to, the money
> due and to become due thereon with interest,
> and all rights accrued or to accrue under
> said Mortgage

was recorded in the Bureau of Conveyances on
February 17, 2011, as Document No. 4050252, on
Certificate No. 852,079.  A copy of the Assignment
is attached, marked Exhibit C, and incorporated
by reference.

15. On February 3, 2011, four days before the
Assignment was executed, a Notice of Mortgagee's
Intention to Foreclose Under Power of Sale
(Notice) was executed by Andrea R. Moreno in her
capacity as an "authorized signatory" of BONY.
The Notice was recorded with the State of Hawaii
Bureau of Conveyances as Document No. 2011-029552

on February 17, 2011.  A copy of the Notice is
attached, marked Exhibit D, and incorporated by
reference.

(Emphasis in original.)

With respect to the chain of title, Plaintiffs allege

that:

16. Plaintiffs are informed and believe and
on that basis allege that the Assignment
notwithstanding, on or about June 1, 2007, First
Magnus sold the Mortgage and Note to Countrywide
Home Loans, Inc. (CWHL), in anticipation of
placing the Mortgage into a Real Estate Mortgage
Investment Conduit (REMIC).

17. Plaintiffs are informed and believe and
on that basis allege that on or about June 1,
2007, CWHL, pursuant to its obligation as a
"Seller," under a Pooling and Servicing
Agreement file with the U.S. Securities and
Exchange Commission (PSA) available at:
http://www.sec.gov/Archives/edgar/data/1402755/000
090514807004996/efc7-1914_ex991.htm, sold the
Mortgage and Note to CWALT, Inc. (CWALT), the
"Depositor" under the PSA.  Plaintiffs request the
Court take judicial notice of the PSA.

18. Plaintiffs are informed and believe and
on that basis allege that on June 1, 2007, CWALT
in turn sold the Mortgage and Note to the
ALTERNATIVE LOAN TRUST 2007-HY6 MORTGAGE
PASSTHROUGH CERTIFICATES, SERIES 2007-HY6, a trust
organized under the laws of the State of New York
(the Trust), pursuant to the PSA.

19. Plaintiffs are informed and believe,
based on the PSA, and on that basis allege that
the Trust had a "Closing Date" (that is, the date
upon which the Trust assets must be in place in
order for the Trust to qualify for REMIC status)
of June 29, 2007.

. . . .

24. Plaintiffs are informed and believe and

5

on that basis allege that contrary to its representation and the intent of the PSA, CWHL did not deliver physical possession of the Mortgage and Note to CWALT, who, contrary to its obligations as set forth in the PSA, did not deliver the Mortgage or the Note to the Trust for the following reasons:

25. First, if CWALT had delivered those documents to the Trust, BONY, as the Trustee would already have had possession of and title to those documents on February 7, 2011, and the Assignment of the Mortgage to BONY by MERS on that date would have been unnecessary.

26. Second, Plaintiffs are informed and believe, based on the testimony of Linda DeMartini in the case of *In re Kemp*, 440 B.R. 624, 628 (Bankr. D.N.J. 2010), and on that basis allege that it was routine practice for CWHL not to convey the mortgages and notes to securitization intermediaries, even though such action would be in contravention of its obligation when it sold them.

27. Plaintiffs are informed and believe and on that basis allege that because the Mortgage and Note were not delivered to the Trust by the Closing Date, the Trust failed as a matter of New York law, because "mere words" of transfer do not constitute a transfer, *Vincent v. Putnam*, 248 N.Y. 76, 83 (1928); delivery must be in as perfect a manner as possible. *In re Van Alstyne*, 207 N.Y. 298, 309 (1912).

28. Plaintiffs are further informed and believe, and on that basis allege that transfer or assignment of the Note or Mortgage to the Trust would be ineffective after the Closing Date, and the Assignment is therefore ineffective to convey the Mortgage to BONY pursuant to the PSA.

[First Amended Complaint.]

Plaintiffs allege that the Assignment from First Magnus is invalid and that MERS had no authority to assign the Note.

[Id. at ¶¶ 34-53.]

Plaintiffs state that in September 2010, they suffered loan distress and began to negotiate with non-party BAC, the loan servicer, to modify or refinance the loan. [Id. at ¶ 54.] They allege that, during the fall of 2010, they discussed the possibility of refinancing the loan with other lenders, who at first appeared willing to negotiate, but that, after February 17, 2011, when the Assignment was filed, all lenders that Plaintiffs had consulted expressed disinterest in any form of refinancing because they believed Plaintiffs' loan would soon be foreclosed. [Id. at ¶¶ 35-56.]

Plaintiffs assert the following claims: Count I - Slander of Title (against BONY and MERS); Count II - Conspiracy to Slander Title (against all Defendants); Count III - unfair and deceptive acts or practices ("UDAP"), in violation of Haw. Rev. Stat. § 480-2 and § 481A-3 (against all Defendants); and Count IV - Breach of Contract (against CWALT and BONY).

Plaintiffs seek the following: general and exemplary damages in an amount to be proven at trial; special damages of at least $700,000 and including attorneys fees; an injunction permanently enjoining Defendants from prosecuting any foreclosure action; order cancelling the Assignment; and any other appropriate relief.

**I.  <u>Motion</u>**

Defendants ask the Court to dismiss the First Amended Complaint with prejudice.  [Motion at 1-2.]  At the outset, Defendants note that (1) Plaintiffs have not denied that they defaulted on their loan obligations, and (2) Plaintiffs' original Complaint was "word for word, nearly identical to other boilerplate lawsuits filed by their lawyer in several other matters pending in this Court."  [Mem. in Supp. of Motion at 1.]

Defendants argue that Plaintiffs' claims must be dismissed because: (1) the Assignment is valid, because MERS did not attempt to assign First Magnus' rights to the Mortgage and Plaintiffs granted MERS the authority to assign the Mortgage and Note; (2) Plaintiffs' claims for slander of title, conspiracy to slander title, and UDAP fail as a matter of law because the Assignment was valid; (3) Plaintiffs plead no facts showing the existence of a conspiracy to slander title; and (4) Plaintiffs plead no facts to show that they were intended third party beneficiaries under the PSA.  [<u>Id.</u> at 2.]

**A.   <u>The Assignment of the Mortgage Is Valid</u>**

Defendants note that Plaintiffs' first three claims for slander of title, conspiracy to slander title, and UDAP each rely on the allegedly invalid Assignment by MERS to BONY.  Defendants argue that MERS did not attempt to assign First Magnus' rights to the Mortgage.  To the extent Plaintiffs argue, based upon a

grammatical analysis of the Assignment, that MERS is solely

nominee for First Magnus, Defendants note that the Assignment

does not use such language. [Id. at 4-5.]

Next, they argue that Plaintiffs' theory that MERS

lacks authority to assign the Mortgage has been rejected in this

district. Plaintiffs' theory, as reflected by the First Amended

Complaint's citation to In re Agard, 44 B.R. 231, 252 (Bankr.

E.D.N.Y. 2001), [First Amended Complaint at ¶ 44,] was denied in

Sakugawa v. Mortgage Electronic Registration Systems Inc., Civil

No. 10-00028 JMS/BMK, 2011 WL 776051 (D. Hawai'i Feb. 25, 2011),

which held that a mortgage identifying MERS as nominee for the

lender established that MERS is the mortgagee under the security

instrument, permitting MERS to take action on behalf of the

lender. Defendants contend that the Mortgage in the instant case

contains language identical to the mortgage in Sakugawa. [Mem.

in Supp. of Motion at 6.] The Mortgage states that Plaintiffs

granted to MERS, as "nominee for Lender and Lender's successor

and assigns," the right "to exercise any and all of those

interests, including but not limited to, the right to foreclose

and sell the Property; and to take any action required of Lender

. . . ." [Id. at 6-7 (quoting Mortgage, First Amended Complaint,

Exh. A).] They argue that the Court should enforce the terms of

the Mortgage, which are identical to those in Sakugawa, because

Plaintiffs have not alleged any facts showing that either the

Mortgage or Assignment is unenforceable. According to Defendants, MERS had the authority to take any action required of First Magnus, including assigning the Mortgage to BONY. [Id. at 6-7.]

Defendants also argue that Plaintiffs' allegations that First Magnus' property rights were transferred to a trustee while in bankruptcy are unsupported and irrelevant. Defendants claim these allegations fail under the Iqbal v. Ashcroft standard, because the are "naked assertions" devoid of "further factual enhancement." [Id. at 7 (citing 129 S. Ct. 1937, 1949 (2009)).] In any event, the Mortgage expressly states that MERS is authorized to act as nominee for the Lender "and Lender's successors and assigns[.]" [Id. at 7 (quoting Mortgage, First Amended Complaint, Exh. A).] Defendants argue that, therefore, even if the lender's property rights were allegedly transferred to the trustee in bankruptcy, Plaintiffs had already granted MERS the power to act with all of First Magnus' powers on behalf of First Magnus, or its successor in interest. [Id. at 8.]

With respect to Plaintiffs' allegations that Kevin Durham, who executed the Assignment on behalf of MERS, did not have the authority to do so, Defendants again argue that the allegation is factually unsupported and based on speculation that Durham was never appointed by the MERS Board of Directors. [Id. at 9.]

Defendants rebut Plaintiffs' claims that the Note does not mention MERS and the Assignment does not describe the Note, arguing instead that, in the Mortgage, MERS has the power to take any action required of the lender. The Mortgage also provides that the Note may be sold one or more times. Defendants claim that Plaintiffs granted MERS the power to sell the Note. [Id.]

## B. Count I - Slander of Title

Defendants argue that Count I fails as a matter of law because Plaintiffs' slander of title claim is predicated entirely on their allegations that MERS did not have the authority to assign the Mortgage or that the Assignment was otherwise invalid.

## C. Count II - Conspiracy to Slander Title

With respect to Count II, Defendants first argue that the entire cause of action is based on conclusory naked assertions. Second, they argue that conspiracy, standing alone, is not a cognizable cause of action. Here, Defendants assert that Plaintiffs allege conspiracy to slander title, but fail to state a claim for slander of title, and that, without a predicate tort, there cannot be a claim for conspiracy. Further, Defendants argue that the formation and operation of a conspiracy require specific factual allegations that the conspirators knowingly entered an agreement to do a wrongful act. [Id. at 9-10 (citing Devries v. Brumback, 53 Cal.2d 643, 648 (1960)).]

## D. **Count III - UDAP**

Plaintiffs list the acts that allegedly violate Haw. Rev. Stat. §§ 480-2(a) and/or 481A-3 in paragraphs 75 to 83 of the First Amended Complaint. According to Defendants, these allegations are based on Plaintiffs' unsupported assumption that MERS could not assign the Mortgage to BONY. Further, Defendants argue that Plaintiffs have not alleged any specific acts that they committed in violation of those statutes. [Id. at 13.]

Defendants contend that Plaintiffs' UDAP allegations are insufficient because they fail to allege actual damages or proof of the amount of damages. Plaintiffs have not identified the damages suffered, and claim only that they were "unable to refinance or otherwise dispose or convey their interest in the [Property] once potential lenders and buyers learned of the Assignment and refused to deal with Plaintiffs." [Id. at 14 (quoting First Amended Complaint at ¶ 80).] Defendants also argue that the Assignment only transferred control of the encumbrance on the Property that Plaintiffs entered of their own accord; therefore, it is Plaintiffs' failure to make loan payments, rather than the Assignment, that impairs their ability to refinance. [Id. at 14.]

## E. **Count IV - Breach of Contract**

With respect to Count IV, Defendants seek dismissal on the grounds that Plaintiffs are not third-party beneficiaries.

As a preliminary matter, Defendants note that the First Amended
Complaint claims that "BSABS breached the PSA when it failed to
convey the Mortgage and Note to the Trust." [<u>Id.</u> at 14 (quoting
First Amended Complaint at ¶ 86).] According to Defendants,
"Plaintiffs do not identify 'BSABS,' anywhere else in the FAC,
indicating that these allegations are not only likely copied from
somewhere else, but also factually inaccurate on their face.
They should be dismissed on these grounds alone." [<u>Id.</u> at 14
n.2.]

Defendants argue that Plaintiffs are not third-party
beneficiaries under the PSA, and have no standing to assert
breaches thereof. According to Defendants, Plaintiffs failed to
plead any precise contract language indicating the clear intent
of Defendants and the Trust to make any borrowers, let alone the
individual Plaintiffs in particular, intended beneficiaries under
the PSA. [<u>Id.</u> at 15.]

In conclusion, BONY and MERS argue that the Court
should dismiss all of Plaintiffs' claims with prejudice.

## II. <u>Memorandum in Opposition</u>

In their Memorandum in Opposition, Plaintiffs contend
that they have set forth cognizable causes of action for slander
of title, conspiracy to slander title, UDAP, and breach of
contract. Plaintiffs also request leave to amend their complaint
to remediate any deficiencies pursuant to Federal Rule of Civil

Procedure 15(a)(2).  [Mem. in Opp. at 1-2.]

   **A.   The Assignment from First Magnus to BONY Is Invalid**

        According to Plaintiffs, "Defendants' motion is

fundamentally based upon a fallacy: that MERS can be all things

to all people in a mortgage transaction at one time, while being

nothing at all at another time."  [Id. at 3.]  Plaintiffs argue

that MERS cannot act both "solely as nominee for the lender," and

as "mortgagee."  Plaintiffs challenge Defendants' interpretation

of Sakugawa, insisting that the court did not hold that MERS had

the authority to make an assignment of a mortgage; rather, the

court did not reach the issue because the foreclosure was

rescinded and the issue was moot.  [Id. at 4 (citing Sakugawa v.

Mortgage Electronic Registration Systems, Inc., 2011 WL 776051,

at *1, *5).]  According to Plaintiffs, "[n]o Hawaii state court

has ruled on whether MERS has authority to make such assignments

'solely as nominee' for a lender who had a year before ceased to

exist."  [Id. at 4.]

        Citing Black's Law Dictionary, Plaintiffs contend that

a "nominee" is a "person designated to act in place of another,

usu. in a very limited way," and as a "party who holds bare legal

title for the benefit of others or who receives and distributes

funds for the benefit of others."  [Id. (quoting Black's Law

Dictionary 1076 (8th ed. 2004)).]  Plaintiffs argue that, under

this definition, a nominee has "'few or no enforceable rights

14

beyond those of a principal whom the nominee serves[,]'" and therefore, "'the legal status of a nominee . . . depends on the context of the relationship of the nominee to its principal.'" [<u>Id.</u> at 4-5 (quoting <u>Landmark Nat'l Bank v. Kessler</u>, 216 P.3d 158, 166 (Kan. 2009)).] Under Plaintiffs' reasoning, MERS' authority is limited to that of an agent, and not a principal. [<u>Id.</u> at 5.]

Plaintiffs cite two cases from other jurisdictions, arguing that they stand for the proposition that MERS, as nominee, lacks standing to assign mortgages. [<u>Id.</u> (citing <u>Citimortgage, Inc. v. Barabas,</u> ___ N.E.2d ___, 2011 WL 1873452, *5 (Ind. App. May 17, 2011); <u>Bank of New York v. Silverberg</u>, 2011 WL 2279723, *5-6 (N.Y.A.D. 2 Dept. June 7, 2011)).]

**B.**   **<u>MERS' Authority Ended on May 15, 2008</u>**

Plaintiffs next argue that any authority MERS had to act on behalf of First Magnus ended on May 15, 2008, more than a year and a half before MERS attempted to assign the Mortgage to BONY. Relying on the Restatement (Third) of Agency, they claim that MERS' authority as agent for principal First Magnus terminated when the principal ceased to exist. [<u>Id.</u> at 7 (citing Restatement (Third) Agency § 3.07(d)).] Plaintiffs state that First Magnus filed for bankruptcy on August 21, 2007, and was completely dissolved on April 2, 2009, which was almost two years before the challenged Assignment. According to Plaintiffs, from

May 15, 2008 through its dissolution, First Magnus' interests were under the control of the liquidating trustee.

In sum, Plaintiffs argue that MERS' agency terminated years before it made the Assignment, and therefore, the Assignment was invalid.

### C. **The Assignment Is Void As MERS Had Nothing to Convey**

Next, Plaintiffs assert that MERS could not assign the Mortgage after First Magnus sold it to the depositor who failed to convey the Mortgage and Note to the Trust. That is, because the Mortgage was sold "during the securitization process, there is no indication that whoever owns the mortgage has consented to MERS' agency." [Id. at 8.] Plaintiffs argue that First Magnus could only convey the Mortgage once, which it did on June 1, 2007; therefore, the Assignment on February 7, 2011 is void because First Magnus had nothing to convey. [Id.]

### D. **The Assignment Was False and Supports Counts I-III**

Plaintiffs posit that, because MERS lacked authority to assign the Mortgage, the Assignment was "false" (in that it implied that MERS had such authority when it did not), and Plaintiffs have stated causes of action for slander of title, conspiracy to slander title, and UDAP. They claim that, as to Counts I through III, the Motion stands or falls on whether the Assignment is "false." Plaintiffs maintain that the Assignment was "false" for the reasons already stated. [Id.]

16

With respect to their UDAP claim (Count III),
Plaintiffs assert that, inasmuch as they seek only equitable
relief, they are not required to allege actual damages. [Id. at
9.]

### E.   **Plaintiffs Adequately Pleaded Conspiracy**

Plaintiffs argue that they adequately pleaded
conspiracy to slander title, and set forth the "who, what, when,
and how" of the conspiracy. [Id.] They claim to have laid out a
"clear agreement between the corporate defendants," sufficient to
maintain a conspiracy claim. [Id.]

### F.   **Plaintiffs Are Third-Party Beneficiaries of the PSA**

With respect to their Count IV breach of contract
claim, Plaintiffs argue that the PSA "clearly indicates an intent
by the parties to give to them, and all of the mortgagors whose
loans were placed in the Trust the benefits attendant to a less
than prime mortgage, servicing, and release of the mortgage to
them." [Id. at 10.] Plaintiffs note that New York law governs
the agreement, and that New York has "adopted the view that the
intent and surrounding circumstances of the contract are relevant
to the analysis of third party rights." [Id. at 11 (citing
Cutler v. Hartford Life Ins. Co., 239 N.E.2d 361, 366-67
(1968)).]

According to Plaintiffs, the "PSA is simply rife with
references to the mortgage loans, the responsibilities of the

depositor and trustee with regard to those loans." [Id. at 11.]
Plaintiffs insist that "they are intended to benefit by the
release of their loan as set forth in the PSA and they are third
party beneficiaries." [Id. at 12.]  To the extent their
allegations in the First Amended Complaint are not clear,
Plaintiffs request leave to amend the complaint to include the
relevant portions of the agreement.  [Id.]

G.   **Request for Further Amendment**

Plaintiffs state that they can amend the First Amended
Complaint to state a further cause of action for slander of title
based upon the Notice of Intent to Foreclose ("Notice"), even if
MERS had authority to assign the Mortgage, because the Mortgage
had not been assigned to BONY when it filed the Notice, and thus
BONY lacked standing to foreclose.  That is, because the
Assignment occurred after BONY executed the Notice, BONY did not
hold the Mortgage.  According to Plaintiffs, the Notice was
executed on February 3, 2011, but the Assignment was not executed
until February 7, 2011.  Plaintiffs argue that it is not relevant
that the Notice was recorded on February 17, 2011, because
recording "only memorialized that which had already occurred,
that is, BONY's intent to foreclose *as mortgagee*."  Plaintiffs
request leave of the Court to allege further causes of action
based on the Notice.  [Id. at 12-13 (emphasis in original).]

Finally, Plaintiffs request leave to amend pursuant to

Fed. R. Civ. P. 15(a)(2), "because no discovery has yet been undertaken, there will be no prejudice to Defendants if Plaintiff is given leave to amend his complaint. . . ." [Id. at 14.]

## III. **Defendants' Reply**

Defendants first assert that Plaintiffs have failed to address the deficiencies in the First Amended Complaint raised by the Motion, including several of Defendants' arguments defending the validity of the Assignment and arguments showing the UDAP claim to be deficient. [Reply at 1.]

Defendants claim that Plaintiffs concede several arguments raised in the Motion, including: (1) Plaintiffs' grammatical analysis of the Assignment is unsupported by the language of the Assignment; (2) Plaintiffs' claim that the signatory to the Assignment did not have the authority to do so is factually unsupported; (3) that Plaintiffs granted MERS the authority to assign the Note; and (4) Plaintiffs fail to address that their UDAP claim is based on conclusory allegations unsupported by specific facts. [Id. at 2.]

### A.    **The Assignment is Valid**

First, Defendants argue that this district court has already recognized in another case that Plaintiffs' theory fails. Defendants cite Phillips v. Bank of America, N.A., 2011 WL 2160583 at n.5 (D. Haw. Jun. 1, 2011), as recognizing that Plaintiffs' theory that MERS cannot act as both mortgagee and

nominee fails and has been rejected in other jurisdictions.

Defendants note that, in <u>Phillips</u>,

> a case in which Plaintiffs' counsel espoused the
> exact same theory, this Court opined that,
> "[a]lthough not clear, Plaintiffs' challenge to
> the 'dual role' of MERS appears to be raising a
> 'split the note' theory of wrongful foreclosure
> that has been rejected elsewhere. <u>Id.</u> citing <u>In
> re. Mortg. Elec. Registration Sys. (MERS) Litig.</u>,
> 2011 WL 251453 at *8 (D. Ariz. Jan. 25, 2011)
> (concluding in multidistrict litigation that
> "[t]he MERS system is not fraudulent"); and
> <u>Cervantes v. Countrywide Home Loans</u>, 2009 WL
> 3157160 at *10 (D. Ariz. Sept. 24, 2009) (same).

[<u>Id.</u> at 3-4.]

Defendants argue that, since Plaintiffs' claims are premised on this faulty theory, they fail as a matter of law and the First Amended Complaint should be dismissed with prejudice. [<u>Id.</u> at 4.]

### B. **The Mortgage Grants MERS the Authority to Assign**

Next, Defendants address Plaintiffs' argument that MERS's status as "nominee" limits its authority to that of an agent, and not a principal. Defendants contend that Plaintiffs' support their claim with Kansas, Indiana, and New York Bankruptcy Court law, while dismissing this district court's recognition that the language of the Mortgage establishes that MERS is both nominee and mortgagee. [<u>Id.</u> (citing <u>Sakugawa v. Mortgage Electronic Registration Systems, Inc.</u>, 2011 WL 776051 (D. Haw. Feb. 25, 2011)).]. Plaintiffs' attempt to distinguish <u>Sakugawa</u> on the grounds that it did not specifically hold that MERS had

the authority to make an assignment of mortgage does not correspond with the court's "implication that the language of the Mortgage is sufficient on its face to support MERS's authority to assign." [Id.]

Defendants acknowledge that, while Sakugawa did not specifically hold that MERS had the authority assign a mortgage and did not reach the issue because it was moot, it nonetheless reasoned that "'nothing prevents anyone from seeking foreclosure on the subject property again.'" [Id. (citing Sakugawa, at *6).] Defendants argue that, by declining to address the subject and ultimately opining that the parties could repeat the same foreclosure process that had been rescinded, Sakugawa acknowledged the validity of MERS's authority to assign the mortgage. [Id.]

Defendants repeat that MERS had the authority to take any action required of First Magnus or its assigns, including assigning the Mortgage to BONY, and therefore, Plaintiffs' claim fails as a matter of law. [Id.]

**C. First Magnus' Bankruptcy Is Not Relevant**

Defendants argue that, even if First Magnus was completely dissolved as Plaintiffs' allege, Plaintiffs fail to show that First Magnus' legal interest in the Mortgage dissolved as well. [Id. at 7.]

Defendants also deny that First Magnus' bankruptcy and

liquidation granted power over all of First Magnus' interests to the trustee. Citing the Bankruptcy Court's Order of May 15, 2008, attached to Plaintiff's Memorandum in Opposition, Defendants assert that the order substitutes "the Liquidating Trustee in place of [First Magnus] . . . as the real party in interest in all contested matters currently pending in the Bankruptcy Case" and in three specifically-named actions unrelated to the case at issue. [Id.]

To the extent Plaintiffs argue that the Liquidating Trustee was also substituted "in place of [First Magnus] as the real party of interest in all Other Proceedings," Defendants note that these "Other Proceedings" were specifically identified as "other bankruptcy cases, and state and federal non-bankruptcy proceedings . . . pending across the United States." [Id.] Because the instant case was not pending as of May 15, 2008, the bankruptcy and the Bankruptcy Court's Order of May 15, 2008, have no relevance to this matter. [Id.]

### D.   MERS Is Authorized to Act for Successors and Assigns

Next, Defendants address Plaintiffs' argument that "because the Mortgage had been sold during the securitization process, there is no indication that whoever owns the [M]ortgage has consented to MERS['s] agency." [Id. at 8 (quoting Mem. in Opp. at 8).] Defendants argue that this claim fails because it is entirely conclusory, and Plaintiffs have failed to address

this deficiency. The Mortgage does not require First Magnus'
successor in interest to "consent" to MERS's agency. Defendants
again note that Plaintiffs have already expressly granted MERS
the power to act on behalf of First Magnus' "successors and
assigns" through the terms of the Mortgage. Instead, Plaintiffs
merely speculate, without citing to any legal authority or
factual support, that MERS's capacity as nominee and mortgagee
was not maintained with the Mortgage whenever it was allegedly
sold. [Id. at 8-9.]

### E. Slander of Title

Defendants assert that Plaintiffs' opposition adds
nothing to their slander of title claim, and repeats an
"identically unconvincing claim made by Plaintiffs' lawyer in
Velasco v. Security Nat. Mort. Co., 2011 WL 2117008 *8 (D. Haw.
May 24, 2011)." [Id. at 9.] Defendants cite the district
court's language in Velasco that, "[s]lander of title is 'a
tortious injury to property resulting from unprivileged, false,
malicious publication of disparaging statements regarding the
title to a property owned by plaintiff, to plaintiff's damage."
[Id. (citing Velasco at *8).] Defendants argue that, here, as in
Velasco, Plaintiffs have made no allegations as to why the
Assignment was false, or how any false publication was done with
malice. [Id. at 10.]

**F.  Conspiracy to Slander Title**

Defendants next argue that Plaintiffs' conspiracy claim is not linked to any cognizable underlying claim, and therefore, fails.  [<u>Id.</u> at 11-12.]

**G.  Plaintiffs Are Not Third-Party Beneficiaries to the PSA**

Defendants state that, in their Memorandum in Opposition, Plaintiffs assert that the PSA shows an "intent by the parties to give [Plaintiffs] and all of the mortgagors whose loans were placed in the Trust[,] the benefits attendant to a less than prime mortgage, servicing, and release of the mortgage to them." [<u>Id.</u> at 12 (citing Mem. in Opp. at 10).]  Defendants argue that the claim fails as a matter of law, because Plaintiffs do not allege any facts to support their allegations that they are third-party beneficiaries entitled to enforce the purported provisions of the PSA.  They also state that Plaintiffs cannot demonstrate that the contracting parties intended to benefit Plaintiffs as third-parties, nor do they identify any particular obligation supposedly contained in the PSA that the Defendants purportedly breached.

Aside from Plaintiffs' claim that "[t]he PSA is simply rife with references to the mortgage loans, and the responsibilities of the depositor and trustee with regard to those loans [Opp. at 11]," Defendants argue that Plaintiffs merely make a conclusory allegation that they are "third-party

24

beneficiaries under the PSA" that falls short. [Id. at 13.]
Further, argue Defendants, although Plaintiffs explain that the
PSA comprises several hundred pages, they nonetheless fail to
cite to any single place in which borrowers and/or mortgagors are
identified as third-party beneficiaries. [Id. at 13-14.]

### H. **Plaintiffs Should Not Be Granted Leave to Amend**

Finally, Defendants argue that Plaintiffs are not
entitled to leave to amend the First Amended Complaint to add an
additional claim for slander of title on the grounds sought.
Defendants note that the Notice and Assignment were both recorded
on February 7, 2011, and under Hawaiʻi law, constructive notice
of a power of sale foreclosure is not deemed to have taken place
until "[f]rom and after the recordation of the notice of
default." [Id. at 15 (quoting HRS § 667-23).] Plaintiffs cannot
assert a cause of action for tortious injury to property
resulting from an allegedly false publication of disparaging
statements regarding the title to a property over a Notice that
had not yet been recorded, for there was no published recording
of an encumbrance on the Property until February 17, 2011, when
it was recorded with the Assignment. [Id. at 15-16.]

### STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a
motion to dismiss a claim for "failure to state a claim upon
which relief can be granted[.]"

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554, 127 S. Ct. 1955).

Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc., 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud.  <u>See</u> <u>Sanford v.</u> <u>MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

In their pleadings, Plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice."  <u>Shroyer v. New Cingular Wireless</u> <u>Servs., Inc.</u>, 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); <u>see also</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind - or scienter - of the defendants may be alleged generally." (citation omitted)); <u>Walling v. Beverly Enters.</u>, 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

When there are multiple defendants,

Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.

<u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764-65 (9th Cir. 2007)

27

(internal quotation marks and citations omitted); see also

Meridian Project Sys., Inc. v. Hardin Constr. Co., 404 F. Supp.

2d 1214, 1226 (E.D. Cal. 2005) ("When fraud claims involve

multiple defendants, the complaint must satisfy Rule 9(b)

particularity requirements for each defendant.").

A motion to dismiss for failure to plead with

particularity is "the functional equivalent of a motion to

dismiss under Rule 12(b)(6)[.]" Vess v. Ciba-Geigy Corp. USA,

317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to

dismiss, the court is not deciding whether a claimant will

ultimately prevail but rather whether the claimant is entitled to

offer evidence to support the claims asserted. Twombly, 550 U.S.

at 563 n.8 (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.

Ct. 1683, 40 L. Ed. 2d 90 (1974)).

## DISCUSSION

### I.   The Assignment Is Valid

The Mortgage states that Plaintiffs granted to MERS, as

"nominee for Lender and Lender's successor and assigns," the

right "to exercise any and all of those interests, including but

not limited to, the right to foreclose and sell the Property; and

to take any action required of Lender . . . ." [Mortgage, First

Amended Complaint, Exh. A.] The Mortgage also states that "MERS

is the mortgagee under this Security Instrument." [Id.] Under

this plain language, MERS had the authority to take any action

required of the lender.

     To the extent Plaintiffs argue that First Magnus'
bankruptcy affects the validity of the Assignment, the Court
notes that First Magnus transferred its beneficial interest in
the Mortgage to Countrywide in July 2007, before it entered
bankruptcy proceedings in August 2007.  In similar circumstances,
courts have ruled that First Magnus' dissolution did not prevent
its successors and assigns from seeking transfer of the mortgage
from MERS.  See, e.g., Kiah v. Aurora Loan Servs., LLC, Civil
Action No. 10-40161-FDS, 2011 WL 841282, at *4 (D. Mass. March 4,
2011) ("The plain language of the mortgage states that MERS was
acting as nominee for First Magnus and its 'successors and
assigns.'  First Magnus' dissolution would not prevent its
successors and assigns, including Aurora, from seeking transfer
of the mortgage from MERS.  Accordingly, the dissolution of First
Magnus would not and could not prevent Aurora from obtaining an
assignment of the mortgage from MERS, both as a matter of law and
according to the arrangement that existed between MERS and Aurora
as a 'successor and assign' of First Magnus.").

     The Court finds Plaintiffs other arguments regarding
the validity of the Assignment to be without merit.
Specifically, there is no basis for Plaintiffs' bare allegations
that Mr. Durham was not authorized to execute the Assignment on
behalf of MERS; in fact, MERS has not contested his authority to

so act.  The Court also rejects as unsupported Plaintiffs'
argument that MERS's status as "nominee" limits its authority to
that of an agent, and not a principal.  Plaintiffs have not met
their burden of demonstrating that MERS was not authorized to
assign the Mortgage to BONY.

The Court next addresses the individual Counts in
Plaintiffs' First Amended Complaint.

## II.  Counts I and II Are Dismissed With Prejudice

Counts I and II, alleging slander of title and
conspiracy to slander title, respectively, are based on the
allegations that the Assignment is not valid or is "false."  As
set forth above, Plaintiffs failed to sufficiently allege that
the Assignment itself was false, and therefore, Plaintiffs cannot
have sufficiently alleged that BONY knew the Assignment was
false.  The Court addresses each Count in turn.

### A.  Count I - Slander of Title

Count I alleges that the Assignment was false and "cast
doubt upon Plaintiffs' title . . . , in that it implied that MERS
had authority to assign the Mortgage and Note when . . . MERS did
not have such authority, and that it gave the false impression
that MERS had assigned valid interests in the Subject Property to
BONY, when it did not."  [First Amended Complaint at ¶ 59.]

> Slander of title is "a tortious injury to
> property resulting from unprivileged, false,
> malicious publication of disparaging statements
> regarding the title to property owned by

plaintiff, to plaintiff's damage." <u>Southcott v.</u>
<u>Pioneer Title Co.</u>, 203 Cal. App. 2d 673, 676, 21
Cal. Rptr. 917 (1962) (citations omitted). . . .

. . . . "To establish slander of title at
common law, a plaintiff must show falsity, malice,
and special damages, i.e., that the defendant
maliciously published false statements that
disparaged a plaintiff's right in property,
causing special damages." <u>B & B Inv. Group v.</u>
<u>Gitler</u>, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20
(Mich. Ct. App. 1998).

<u>Doran v. Wells Fargo Bank</u>, Civil No. 11-00132 LEK-BMK, 2011 WL
2160643, at *13 (D. Hawai'i May 31, 2011) (some citations
omitted).

Plaintiffs fail to state a claim for slander of title.
They have not plausibly alleged the false, malicious publication
of disparaging statements regarding their title to the Property.
Plaintiffs' allegations do not amount to "malice" or detail how
Defendants knew the Assignment was "false." <u>See</u> <u>Velasco v.</u>
<u>Security Nat. Mort. Co.</u>, CV. No. 10-00239 DAE-KSC, 2011 WL
2117008, at * 8 (D. Hawai'i May 24, 2011) ("There is no
allegation as to why the assignment was false aside from
conclusory allegations.  Further the Court finds that Plaintiffs
have insufficiently alleged that any false publication was done
with malice. . . .  In any event, having failed sufficiently to
allege that the recording itself was false, it cannot be that
Plaintiffs sufficiently alleged that BAC knew the assignment was
false as suggested by the FAC.") (citations omitted).

In light of the foregoing, Plaintiffs' Count I claim

31

for slander of title fails to state a claim upon which relief can be granted. The Court further FINDS that granting Plaintiffs leave to amend their slander of title claim would be futile. See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court . . . does not abuse its discretion in denying leave to amend where amendment would be futile."). Count I is hereby DISMISSED WITH PREJUDICE.

B.    **Count II - Conspiracy to Slander Title**

Plaintiffs allege that or about September of 2007, Defendants, "became aware of irregularities in the process that created the Trust, including but not limited to the fact that . . . BONY had acknowledged receipt of the Mortgage and Note when it had not received them, that called into question the validity of the Trust." [First Amended Complaint at ¶ 67.] On that basis, Plaintiffs claim that "Defendants agreed among and between themselves that they would do . . . the following as necessary: execute documents necessary to give the impression that the Trust had title to the mortgages in the when it did not[.]" [Id. at ¶ 69.]

A claim of conspiracy is derivative of other wrongs. See, e.g., Chung v. McCabe Hamilton & Renny Co., 109 Hawai`i 520, 530, 128 P.3d 833, 843 (2006); Weinberg v. Mauch, 78 Hawai`i 40, 49, 890 P.2d 277, 286 (1995). Insofar as this Court has dismissed Plaintiffs' slander of title claim, this Court must

also dismiss the derivative conspiracy claim.

In light of the foregoing, Plaintiffs' Count II claim for conspiracy to slander title fails to state a claim upon which relief can be granted. The Court further FINDS that granting Plaintiffs leave to amend their conspiracy to slander title claim would be futile. <u>See</u> <u>Flowers</u>, 295 F.3d at 976. Count II is hereby DISMISSED WITH PREJUDICE.

## III. <u>Count III Is Dismissed With Prejudice</u>

Plaintiffs allege that they are consumers as defined in Haw. Rev. Stat. § 480-1 and that Defendants engaged in various acts or practices that violated Haw. Rev. Stat. §§ 480-2(a) and/or 481A-3. [First Amended Complaint at ¶¶ 76-83.] Specifically, they assert that:

> The acts of Defendants in executing, recording, and conspiring to execute and record a document that cast doubt on Plaintiffs' title as described above, are deceptive, in that they would tend to lead members of the public believe that BONY had an interest in the Subject Property when it did not, and are therefore constitute a UDAP under H.R.S. §481A-3(12).

[<u>Id.</u> at ¶ 79.]

Section 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 481A-3 states:

> (a) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:

> (1) Passes off goods or services as those of

33

another;

(2) Causes likelihood of confusion or of
misunderstanding as to the source,
sponsorship, approval, or certification of
goods or services;

(3) Causes likelihood of confusion or of
misunderstanding as to affiliation,
connection, or association with, or
certification by, another;

(4) Uses deceptive representations or
designations of geographic origin in
connection with goods or services;

(5) Represents that goods or services have
sponsorship, approval, characteristics,
ingredients, uses, benefits, or quantities
that they do not have or that a person has a
sponsorship, approval, status, affiliation,
or connection that the person does not have;

(6) Represents that goods are original or new
if they are deteriorated, altered,
reconditioned, reclaimed, used, or
secondhand;

(7) Represents that goods or services are of
a particular standard, quality, or grade, or
that goods are of a particular style or
model, if they are of another;

(8) Disparages the goods, services, or
business of another by false or misleading
representation of fact;

(9) Advertises goods or services with intent
not to sell them as advertised;

(10) Advertises goods or services with intent
not to supply reasonably expectable public
demand, unless the advertisement discloses a
limitation of quantity;

(11) Makes false or misleading statements of
fact concerning the reasons for, existence
of, or amounts of price reductions; or

(12) Engages in any other conduct which
similarly creates a likelihood of confusion
or of misunderstanding.

(b) In order to prevail in an action under this
chapter, a complainant need not prove competition
between the parties or actual confusion or
misunderstanding.

(c) This section does not affect unfair trade
practices otherwise actionable at common law or
under other statutes of this State.

To the extent Plaintiffs' UDAP claims are based upon
the allegedly false Assignment, the Court DISMISSES Count III.
To the extent Plaintiffs allege non-Assignment related UDAP
claims, they fail to state a claim as between a lender and
borrower. This district court has recognized that:

> "[A]s a general rule, a financial institution
> owes no duty of care to a borrower when the
> institution's involvement in the loan transaction
> does not exceed the scope of its conventional role
> as a mere lender of money." Nymark v. Heart
> Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56
> (Cal. Ct. App. 1991). Nothing in the
> Complaint indicates that any Defendant
> "exceed[ed] the scope of [a] conventional
> role as a mere lender of money." The claims
> fail on that basis alone.

Casino v. Bank of Am., Civil No. 10-00728 SOM/BMK, 2011 WL
1704100, at *12-13 (D. Hawai`i May 4, 2011). The lender, First
Magnus, owes no duty of care to Plaintiffs beyond its
conventional role as lender of money. Plaintiffs have not
alleged that First Magnus or its successor, BONY, exceeded the
scope of a mere lender. The UDAP claim in Count III fails on
this basis as well as to defendant BONY.

35

Plaintiffs' Count III claim for violation of Haw. Rev. Stat. §§ 480-2(a) and/or 481A-3 fails to state a claim upon which relief can be granted.  The Court further FINDS that granting Plaintiffs leave to amend their UDAP claim would be futile.  <u>See Flowers</u>, 295 F.3d at 976.  Count III is hereby DISMISSED WITH PREJUDICE.

## IV.  <u>Count IV Is Dismissed Without Prejudice</u>

Plaintiffs allege that BONY breached the PSA when it acknowledged that it had physical possession of the Mortgage and Note when it did not.  [First Amended Complaint at ¶ 87.] Plaintiffs are not parties to the PSA, but claim to be third-party beneficiaries entitled to enforce its provisions.  The Court disagrees.

"Generally, 'third parties do not have enforceable contract rights.  The exception to the general rule involves *intended* third-party beneficiaries.'"  <u>Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc.</u>, 115 Hawai`i 232, 269, 167 P.3d 225, 262 (2007) (quoting <u>Pancakes of Hawai`i, Inc. v. Pomare Props. Corp.</u>, 85 Hawai`i 300, 309, 944 P.2d 97, 106 (App. 1997)).  An intended third-party beneficiary has standing to enforce contract provisions from which it is intended to benefit.  <u>Id.</u> at 270, 167 P.3d at 263 (citations omitted).

The party claiming to be an intended third-party

beneficiary bears the burden of proving that status. <u>Id.</u> at 271,

167 P.3d at 264 (citations omitted). Even where the parties are

aware that a contract – or, in this case, a provision in a

contract – is designed to benefit others, "it is not enough that

the parties know, expect[,] or even intend that such people may

benefit or that they are referred to in the contract." <u>Id.</u> at

272, 167 P.3d at 265 (internal quotation marks and citations

omitted) (alteration in original). Rather, there must be

evidence that the contracting parties intended to confer a direct

benefit on the third party. <u>Id.</u>

The rights of a third party beneficiary can arise from

a promise that is "implied from the circumstances," <u>Jou v. Nat'l</u>

<u>Interstate Ins. Co. of Hawai`i</u>, 114 Hawai`i 122, 131, 157 P.3d

561, 570 (Ct. App. 2007) (citation and internal quotation marks

omitted). Hawai`i courts, however, are reluctant to find

intended third-party beneficiary status absent a clear

recognition of the third party and the conferred benefit. <u>See</u>

<u>Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship</u>, 115

Hawai`i 201, 215 n.15, 166 P.3d 961, 975 n.15 (2007) (finding no

third party beneficiary status in part because "the Agreement

does not indicate that the [contracting parties] agreed between

themselves to bestow a benefit upon the [third parties] . . ."

(internal quotation marks omitted)); <u>see also</u> <u>Pancakes of Hawaii</u>,

85 Hawai`i at 309, 944 P.2d at 106 (finding no third party

beneficiary status where "nothing in the terms of the lease or in the record indicates [that the third parties] would benefit in any way from the lease agreement").

Under the circumstances presented, Plaintiffs have not met their burden of establishing that they are intended third-party beneficiaries of the PSA. That is, Plaintiffs do not allege any facts to support their allegations that they are third-party beneficiaries entitled to enforce the PSA. Plaintiffs point only to a provision of the PSA which grants the Master Servicer power to execute and deliver instruments of satisfaction or cancellation, or of partial or full release or discharge with respect to the Mortgage. Plaintiffs, however, do not explain how this provision is evidence of any intent between the PSA members to benefit Plaintiffs. In sum, Plaintiffs point to no provision of the PSA in which borrowers and/or mortgagors are identified as third-party beneficiaries, and the Court will not infer such status absent a clear recognition of the third party and the conferred benefit. The Court therefore DISMISSES Count IV WITHOUT PREJUDICE.

Plaintiffs are given leave to submit a motion to the magistrate judge that seeks permission to file a Second Amended Complaint to state a claim for breach of contract. The proposed Second Amended Complaint must be attached to the motion and may not reassert the claims set forth in what are now Counts I, II,

or III.  Any such motion shall be filed no later than **September 7, 2011**.  If Plaintiffs fail to timely file a motion seeking leave to file an attached Second Amended Complaint, judgment will be automatically entered in favor of Defendants. The Court CAUTIONS Plaintiffs' counsel to ensure that any new pleading does not repeat the deficiencies already called to his attention.

### CONCLUSION

On the basis of the foregoing, Defendants Bank of New York Mellon and Mortgage Electronic Registration Services, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint, filed on July 18, 2011, is HEREBY GRANTED IN PART as to Counts I, II, and III, and DENIED IN PART as to Count IV.  That is, Counts I, II, and III are DISMISSED WITH PREJUDICE and Count IV is DISMISSED WITHOUT PREJUDICE.  Plaintiffs have until **September 7, 2011** to file a motion seeking permission to file a Second Amended Complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 23, 2011.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JOHN S. COOPER, ET AL. V. BANK OF NEW YORK, ET AL; CIVIL NO. 11-00241 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**